IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| HOWARD SMITH, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) |
| v. | ) Civil Case No. 1:15-cv-435 |
| | ) Related Case No. 1:97-cr-341 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Respondent. | ) |
| | ) |

## Memorandum Opinion

This case comes before the Court on Howard Smith Jr.'s ("Petitioner") Petition to Vacate, Set Aside and/Or Correct His Sentence Pursuant to Title 28, U.S.C. §2255.

On December 16, 1996, Petitioner, a Lorton Reformatory Complex ("Lorton") inmate, stabbed and killed an unarmed fellow inmate, Donnell Keith McDowell, with a homemade knife, otherwise known as a "shank." At the time he committed the murder, Petitioner was already serving a twenty year to life sentence for the first-degree murder of Nelson Able in Washington, D.C. on March 26, 1987, as well as a concurrent two to six year sentence for an unrelated conviction for assault with a dangerous weapon. The latter conviction resulted from Petitioner's shooting and wounding four victims outside a

1

Washington nightclub on May 25, 1987.

As to McDowell's murder, the government proved its case at trial primarily by the testimony of two inmate eyewitnesses who saw the murder; six Lorton correctional officers who testified about Petitioner's efforts to fabricate a false alibi; another inmate to whom Petitioner admitted the murder, as well as the false alibi that Petitioner hoped would exculpate him; the medical examiner who conducted McDowell's autopsy; and McDowell's father. Although Petitioner did not testify at trial, the defense called eight witnesses in an effort to undermine the credibility of the government's witnesses. At the conclusion of a four-day jury trial in February 1998 in the United States District Court for the Eastern District of Virginia, the jury acquitted Petitioner of first-degree murder but convicted him of second-degree murder and illegal possession of the murder weapon (the shank).

On May 29, 1998, the district court sentenced Petitioner to life without parole on the murder charge and to a concurrent five years for the illegal possession of the shank. On direct appeal, Petitioner raised four claims, arguing that the district court erred with regard to: (1) denying his motion under Fed. R. Crim. P. 29 with respect to his conviction for possession of the shank; (2) instructing the jury regarding false exculpatory statements; (3) granting a two-level sentence enhancement for

2

obstruction of justice; and (4) sentencing Petitioner as a career offender. *United States v. Smith*, 188 F.3d 505, *1 (4th Cir. 1999) (per curiam) (unpublished). On August 31, 1999, the United States Court of Appeals for the Fourth Circuit affirmed Petitioner's conviction and sentence, noting that "there was substantial evidence to support the verdict in this case." *Id.* Petitioner nevertheless filed a motion for new trial on October 13, 1999, which was later denied at the conclusion of a hearing on the matter held on March 23, 2000. Petitioner's appeal of that decision, filed on April 12, 2000, was denied as untimely. *United States v. Smith*, 1 F. App'x 250, 250-51 (4th Cir. 2001) (per curiam)(unpublished).

Fourteen years later, Petitioner filed the instant motion for relief pursuant to 28 U.S.C. §2255.

Under 28 U.S.C. §2255, a prisoner in federal custody who has exhausted his direct appeal may collaterally attack his sentence on four limited grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255. The petitioner bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

3

There is a one-year limitation period for filing a petition under §2255. *See* 28 U.S.C. §2255(f). Normally, the limitation period begins to run from the date on which a conviction becomes final. *See* 28 U.S.C. §2255(f)(1). A conviction becomes final when the last appeal is taken, or the time to file such an appeal (including a writ of certiorari) expires. *See Griffith v. Kentucky,* 479 U.S. 314, 321 n.6 (1987). A defendant has ninety days to file a petition for a writ of certiorari seeking review of a judgment by a United States court of appeals. *See* Sup.Ct. R. 13.1. Thus, if a defendant's conviction is affirmed on direct appeal and he does not file a petition for certiorari, the judgment of conviction becomes final when the time expires for filing a petition for certiorari. *Clay v. United* States, 537 U.S. 522 (2003). A prisoner cannot delay this deadline by filing a new trial motion under Fed. R. Crim. P. 33. *See United States v. Prescott,* 221 F.3d 686, 688-89 (4th Cir. 2000).

To overcome this one-year statutory deadline, a petitioner bears a heavy burden. The Fourth Circuit has cautioned that "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir. 2000). Thus, equitable tolling is appropriate only in "those rare instances where—due to circumstances external to

4

the party's own conduct—it would be unconscionable to enforce the limitation against the party." *Hill v. Braxton,* 277 F.3d 701, 704 (4th Cir. 2002) (quoting *Harris,* 209 F.3d at 330). Accordingly, a petitioner seeking equitable tolling of the one-year deadline "must show (1) that he diligently pursued his rights and (2) that some extraordinary circumstance stood in the way of his timely filing." *Wigenton v. United States,* 2014 WL 7405799 at *2 (E.D. Va. Dec. 30, 2014) (citing *Holland v. Florida,* 560 U.S. 631. 663 (2010)). In order to assert equitable tolling, a petitioner "bears a strong burden to show specific facts that demonstrate he fulfills both elements of the test." *United States v. Ricks,* 2013 WL 1790145 at *4 (E.D. Va. Apr. 25, 2013) (citing *Yang v. Archuleta,* 525 F.3d 925, 928 (10th Cir. 2008)).

The Supreme Court has noted that collateral review, such as habeas review, "is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States,* 523 U.S. 614, 621 (1998) (citations omitted). *See also United States v. Frady,* 456 U.S. 152, 166 (1982) (affirming "the well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."). Consequently, the "doctrine of procedural default bars the consideration of a claim that was not raised at the appropriate time during the original proceedings or on

appeal." *Hurdle v. United States,* 2007 WL 1555779 at *2(E.D. Va. May 22, 2007). This doctrine is "adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgements." *Massaro v. United States,* 538 U.S. 500, 504 (2003).

A procedurally defaulted claim may be considered on collateral review in only limited circumstances. First, ineffective-assistance-of-counsel claims may be the subject of a proper §2255 motion despite a petitioner's failure to seek direct review. *See United States v. DeFusco,* 949 F.2d 114, 120-21 (4th Cir. 1991).

Second, procedural default will not bar collateral relief where a petitioner shows both (1) cause and (2) actual prejudice resulting from the alleged error underlying his §2255 motion. *See Bousley,* 523 U.S. at 622; *Frady,* 456 U.S. at 167; *United States v. Mikalajunas,* 186 F.3d 490, 492-95 (4th Cir. 1999). "[The existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the...procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Additionally, the petitioner must demonstrate "that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher v. Pruett,* 126 F.3d 561,

572 (4th Cir. 1997) (quoting *Murray,* 477 U.S. at 494).

Finally, if a petitioner can demonstrate actual innocence then collateral relief should be granted to avoid a miscarriage of justice. *See Schlup v. Delo,* 513 U.S. 298, 321 (1995). But "a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *United States v. Pettiford,* 612 F.3d 270, 282 (4th Cir. 2010) (internal quotation marks omitted); *see also Bousley,* 523 U.S. at 623 ("It is important to note in this regard that actual innocence means factual innocence, not mere legal insufficiency."). Moreover, the petitioner "must show actual innocence by clear and convincing evidence." *Mikalajunas,* 186 F.3d at 493. And a claim of actual innocence requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup,* 513 U.S. at 324. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id. See also Calderon v. Thompson,* 523 U.S. 538, 559 (1998)("Given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected.") (internal quotation marks omitted).

7

In his motion, Petitioner collaterally challenges his conviction and sentence, reciting numerous grounds for relief. These grounds fall within roughly five categories: (1) newly discovered evidence that purportedly undermines the testimony of a government witness; (2) prosecutorial misconduct; (3) ineffective assistance of counsel; (4) police misconduct; and (5) a conflict of interest on the part of defense counsel. For the reasons described below, each of Petitioner's claims for relief should be denied as untimely as well as procedurally defaulted or devoid of merit.

Petitioner's conviction became final on November 29, 1999, the last day upon which he could petition for a writ of certiorari with the Supreme Court. *Compare Smith,* 188 F.3d at *1 *with* Sup.Ct. R. 13.1. Thus, Petitioner had one year from that date—until November 29, 2000—to file a motion for relief under §2255. *See* §2255(f). For the purposes of calculating this deadline, it is irrelevant that Petitioner filed a motion for new trial on October 13, 1999. *See Prescott,* 221 F.3d at 688-89.

To excuse filing his §2255 motion late, Petitioner relies upon 28 U.S.C. §2255(f)(4). This provision, however, only tolls the one-year filing deadline to "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Whether due diligence has been exercised is a fact-specific inquiry unique

8

to each case. *Wims v. United States,* 225 F.3d 186, 190-91 (2d Cir. 2000). A petitioner bears the burden to prove that he exercised due diligence. *DiCenzi v. Rose,* 452 F.3d 465, 471 (6th Cir. 2006). "Due diligence. . .does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option." *Anjulo Lopez v. United States,* 541 F.3d 814, 818 (8th Cir. 2008) (internal quotation marks omitted). It does, however, "at least require that a [petitioner] make *reasonable* efforts to discover the facts supporting his claims." *Id.* Moreover, in evaluating a petitioner's diligence, the Court must be mindful that the "statute's clear policy calls for promptness." *Johnson v. United States,* 544 U.S. 295, 311 (2005).

The purported facts that Petitioner relies on stem from an affidavit provided by Petitioner's fellow Lorton inmate, Michael Dickerson, concerning Oliver Clark—one of the two inmate eyewitnesses who testified to seeing Petitioner murder McDowell. In 1997, Dickerson pleaded guilty to murdering another inmate, Andre Gales, on August 13, 1996. *Spears v. United States,* 2013 WL 3874542 at *1 (E.D. Va. July 24, 2013). According to Dickerson's affidavit, Clark was also an eyewitness to Gales's murder and therefore placed in protective custody at Lorton as early as August 14, 1996. To this, Petitioner adds his assertion that Clark continued to cooperate with law enforcement officials with regards to Gales's murder as late as December 10, 1996.

9

Petitioner speculates that on December 16, 1996—the date on which McDowell was murdered—Clark was still in protective custody and would therefore have been unable to witness McDowell's murder (as Clark later testified at trial to doing). (Id.). Petitioner claims that he could not have discovered these purported facts from Dickerson until June 28, 2014, when he and Dickerson were housed in the same correctional facility, thus excusing an otherwise untimely motion for relief.

Petitioner's reliance upon §2255(f)(4) is misplaced for two reasons. First, in February 1998, Petitioner was aware of Clark's cooperation with law enforcement in the months and weeks leading to McDowell's murder. Petitioner's defense counsel raised a similar issue at trial, including during cross-examination of Clark. Petitioner's defense counsel reiterated this point during closing arguments. Petitioner fails to explain why the facts about Clark's whereabouts at the time of McDowell's murder could not have been discovered and brought to the Court's attention long before Petitioner's motion under §2255 was rendered untimely.

Second, the vast majority of the grounds for relief that Petitioner's motion recites—e.g., that prosecutors withheld exculpatory evidence, or that defense attorneys failed to properly impeach witnesses—do not pertain in any way to the facts that Petitioner cites regarding Clark's testimony.

10

Therefore, even if Petitioner could prove that these facts did satisfy §2255(f)(4)'s narrow exception to the one-year deadline, it would not cure what would otherwise remain an untimely motion for relief. If Petitioner's motion is construed as a request for equitable tolling, this, too, should be denied, as he has failed to demonstrate either that he has diligently pursued any of his claims or that extraordinary circumstances have stood in the way of his timely filing. *See Holland,* 560 U.S. at 663. Accordingly, Petitioner's motion should be denied as time-barred. Even if Petitioner's claims were not untimely, his motion should still be denied.

The first of five categories of grounds for relief upon which Petitioner collaterally attacks his conviction, which pertains to Clark's eyewitness testimony, should be denied as procedurally defaulted and without merit. As previously noted, the substance of this claim is Petitioner's allegation that Dickerson's affidavit proves that Clark's prior cooperation with law enforcement in an unrelated investigation precluded Clark from witnessing McDowell's murder. Petitioner failed to raise this issue on direct appeal, thus rendering it procedurally defaulted. *See Hurdle,* 2007 WL 1555779, at *2.

Even if this Court were to interpret Petitioner's claim as one of actual innocence that could excuse his procedural default, the claim still fails. *See Bousley,* 523 U.S. at

623. The Supreme Court has instructed that "when considering an actual-innocence claim...the District Court...may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *House v. Bell,* 547 U.S. 518, 537 (2006). Thus, "[t]his Court and others have dismissed unsupported and long-delayed affidavits as having weak-to-no probative value in establishing the actual innocence of a petitioner seeking to challenge his conviction." *Spears v. United States,* 2013 WL 3874542 at *3 (E.D. Va. July 24, 2013).

Here, Petitioner fails to present any convincing evidence of his innocence, and therefore fails to establish actual innocence as a basis for *habeas* relief. The evidence offered by Petitioner to support a claim of actual innocence in this regard is Dickerson's affidavit. The eighteen-year delay between the affidavit's submission and the events it describes, as well as the identity of the affidavit's author, makes this evidence of no probative value.

Even if this Court were inclined to give any credence to Dickerson's affidavit, the affidavit offers minimal support to Petitioner's actual innocence claim. The affidavit merely indicates that Clark was in protective custody at Lorton—and thus not in "open population"—sometime in and following August 1996. It fails to address Clark's testimony that several months

later, on December 16, 1996, he witnessed Petitioner stab McDowell. *See also Gutierrez Sandoval v. United States,* 2010 WL 5300818 at *3 (E.D. Va. Dec. 17, 2010) ("It is well settled that conclusive allegations are insufficient to entitle a petitioner to relief under §2255."). Further, Dickerson's affidavit in no way undermines the additional evidence of Petitioner's guilt presented at trial, including the testimony of Sylvester Knight, who also saw Petitioner stab McDowell, and Parnell Dawkins, to whom Petitioner confessed the murder and described efforts to create a false alibi. Against this record, Petitioner fails to present any evidence that dissuades the Court from denying this claim as procedurally defaulted. *See Wadlington v. United States,* 428 F.3d 779, 783 (8th Cir. 2005) ("Th[e] [actual innocence] standard is strict; a party generally cannot demonstrate actual innocence where there is sufficient evidence to support a conviction.").

The second category of claims upon which Petitioner collaterally attacks his sentence and conviction is prosecutorial misconduct. As noted above, these claims are time-barred; they are also procedurally defaulted because Petitioner could have raised these claims on direct appeal yet failed to do so. *See Hernandez Portillo v. United States,* 2014 WL 3615815 at *16 (E.D. Va. July 17, 2014) ("A claim of prosecutorial misconduct is procedurally defaulted if it could have been, but

13

was not, raised on appeal.").

Even if these claims were not barred, Petitioner still fails to carry his burden of demonstrating prosecutorial misconduct. *See Cole v. United States*, 2014 WL 3812328 at *2 (E.D. Va. July 31, 2014) (citing *United States v. Scheetz,* 293 F.3d 175, 185 (4th Cir. 2002)). Courts review prosecutorial misconduct claims "to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Bereano,* 161 F.3d 3, *9 (4th Cir. 1998) (unpublished). In order to meet his burden, a petitioner must prove two elements: "that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the [petitioner's] substantial rights so as to deprive the [petitioner] of a fair trial." *United States v. Lyons Capital, Inc.,* 238 F.3d 416. *4 (4th Cir. 2000) (per curiam) (unpublished). Petitioner fails to prove either element with regard to any of the alleged grounds for prosecutorial misconduct that he recites.

Petitioner first contends that prosecutors committed misconduct when they "allowed Oliver Clark to use false eyewitness testimony," both before a grand jury and later at trial. Petitioner stakes his contention that Clark committed perjury on two assertions: that Clark could not have physically

14

witnessed McDowell's murder, and that Clark's pretrial statements were inconsistent with his trial testimony. As previously stated, Petitioner failed to raise this argument on direct appeal, rendering it procedurally defaulted. *See Frady*. 456 U.S. at 165. Even if this argument is construed as a claim of actual innocence, Petitioner falls short of establishing the clear and convincing evidence of actual innocence required to cure his default. *See Mikalajunas,* 186 F.3d at 493.

Petitioner also claims that prosecutors committed misconduct by offering Clark various benefits in exchange for Clark's testimony, including $300 and a letter to the parole board on Clark's behalf. Peititioner neglects to elaborate why such actions constitute prosecutorial misconduct. *See Watson v. United States,* 2011 WL 6697900 at *3 (E.D. Va. Dec. 20, 2011) ("A §2255 petition cannot stand on vague and conclusory assertions of a constitutional violation; rather, the petition must set forth facts with sufficient detail to point the district court to the real possibility of a constitutional error.") (citations omitted). Nor does Petitioner offer a reason why this claim—which he failed to raise on direct appeal—should not be denied now as procedurally defaulted. *See Frady,* 456 U.S. at 165.

Setting these obstacles aside, Petitioner's argument still fails. "The use of informants to uncover criminal conduct and to

15

prosecute violators is a long-standing and established practice." *United States v. Anty,* 203 F.3d 305, 310 (4th Cir. 2000). The Fourth Circuit has "regularly reviewed trials in which paid government informants served as witnesses, considering such issues as paid informants' competency as witnesses, their credibility, the necessity for cautionary jury instructions regarding their credibility, and the disclosure of their status to the defense." *Id.* In none of those cases did the Fourth Circuit "express any doubt about the legality of the practice." *Id.* (citing *United States v. Mason,* 993 F.2d 406, 409-1O (4th Cir. 1993); *United States v. Brooks,* 928 F.2d 1403,1409-10 (4thCir. 1991); *United States v. Chavis,* 880 F.2d 788, 793-94 (4th Cir. 1989); *United States v. Melia,* 691 F.2d 672, 675-76 (4th Cir. 1982); *United States v. Hung.* 667 F.2d 1105, 1107 (4th Cir. 1981); *United States v. Gregorio.* 497 F.2d 1253, 1261 (4th Cir. 1974); *Meyers v. United States.* 207 F.2d 413, 413 (4th Cir. 1953) (per curiam). Petitioner fails to present a reason for the Court to diverge from this precedent and find that it was improper for prosecutors to offer benefits to witnesses such as Clark.

Petitioner also claims that several of the prosecutor's remarks during closing arguments constituted prosecutorial misconduct. In particular, Petitioner alleges that remarks referring to him as, *inter alia,* a "coward" and a "one man

judge, jury, and executioner" were improper, as was the prosecutor's comment that Petitioner may have murdered McDowell because "maybe [Petitioner] was protecting his business" (of selling clothes to other inmates)—an allegation which Petitioner claims the evidence at trial did not support. However, Petitioner did not raise this argument on direct appeal, rendering it procedurally defaulted. *See Frady*, 456 U.S. at 165.

Even so, Petitioner fails to show that any of the remarks at issue constituted prosecutorial misconduct. "[G]reat latitude is accorded counsel in presenting closing arguments to a jury. In our adversary system, prosecutors are permitted to try their cases with earnestness and vigor, and the jury is entrusted within reason to resolve heated clashes of competing views." *United States v. Johnson*, 587 F.3d 625, 632 (4th Cir. 2009) (citations omitted) (internal quotation marks omitted). This is especially true of closing argument—the "time for energy and spontaneity, not merely a time for recitation of uncontroverted facts." *Id.* (internal quotation marks omitted). "To be sure, there are some lines that prosecutors may not cross. But to parse through a prosecutor's closing statement for minor infelicities loses sight of the function of our adversary system, which is to engage opposing views in a vigorous manner." *Id.* at 633 (citation omitted).

Even where a prosecutor's remarks are deemed improper, it

need not follow that the remarks were so prejudicial as to deprive a defendant of a fair trial. *See Darden v. Wainwright,* 477 U.S. 169, 179-80 (1986). In such instances, the "relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id. See also Bennett v. Angelone,* 92 F.3d 1336, 1346 (4th Cir. 1996) ("[N]ot every improper trial argument amounts to a denial of due process."); *United States v. Rogers,* 853 F.2d 249, 251-53 (4th Cir. 1988) (remarking that a prosecutor's reference to defendant as a liar, thief, and crook, while excessive and uncalled for, was harmless overkill and not plain error).

Petitioner also argues the prosecutors committed misconduct when they "stole petitioner Howard L. Smith Jr. [d]efense [sic]" and "deliberately interfered with attorney-client relations." The argument lacks the requisite specificity to be an actionable prosecutorial misconduct claim.

Petitioner's final claim of prosecutorial misconduct, based on an allegation that the government failed to disclose exculpatory evidence, similarly fails. Notably, at a motions hearing approximately one month before Petitioner's trial began, Petitioner's defense counsel stated "we have had a pretty open discovery process," and further accepted the government's representation that there was no *Brady* material in the case.

Petitioner instead contends that prosecutors withheld a report authored by correctional officer Roy Grillo (concerning his interview of Petitioner following McDowell's murder), as well as various D.N.A. samples.

Petitioner failed to raise these claims on direct appeal and they are therefore procedurally defaulted. *See Frady,* 456 U.S. at 165. Assuming, however, that Petitioner intends to style these claims to indicate that he is actually innocent, he bears the burden of presenting clear and convincing evidence of actual innocence. *See Mikalajunas,* 186 F.3d at 493. Because he fails to do so, these claims remain defaulted and must be denied.

Petitioner argues—as a third category of claims that entitle him to relief—that his defense attorneys provided constitutionally deficient assistance. Because ineffective assistance of counsel claims are properly raised via a §2255 motion, Petitioner's failure to raise these claims on direct appeal does not render them procedurally defaulted. *See DeFusco,* 949 F.2d at 120-21. Even so, Petitioner's ineffectiveness claims remain subject to the one-year deadline imposed under §2255(f), thus rendering them statutorily barred. *See, e.g., Kelly v. United States,* 2013 WL 150325 at*l (E.D. Va.Jan.10,2013).

Even if Petitioner's claims were not time-barred, none of the grounds for relief that he recites demonstrate that his defense counsel was deficient. "The proper standard for attorney

19

performance is that of reasonably effective assistance."
*Strickland v. Washington*. 446 U.S. 668, 687 (1984). Claims of
ineffective assistance are evaluated using a two-part test: a
petitioner must demonstrate that (1) counsel's performance fell
below an objective standard of reasonableness; and (2) "that
deficient performance prejudiced the defense." *Id*. at 687-88.
"Failure to make the required showing of either deficient
performance or sufficient prejudice defeats the ineffectiveness
claim." *Id*. at 700.

Objective reasonableness is "simply reasonableness under
prevailing professional norms...considering all the
circumstances" regarding the representation. *Id*. at 688. There
is a strong presumption that counsel rendered adequate
assistance and made all significant decisions in the exercise of
reasonable professional judgment. *Id*. at 689-90. *See also United
States v. Terry*. 366 F.3d 312, 316-18 (4th Cir. 2004). Review of
counsel's performance must be comprehensive and not narrowly
limited to counsel's failings in determining whether the
presumption of adequate assistance has been overcome,
*Strickland,* 446 U.S. at 691, and courts should be "reluctant to
second guess the tactics of trial lawyers." *Goodson v. United
States,* 564 F.2d 1071, 1072 (4th Cir. 1997); *see also United
States v. Dehlinger,* 740 F.3d 315, 325 (4th Cir. 2014)("The
Sixth Amendment does not provide a basis for disappointed

clients to launch after-the-fact attacks on the objectively reasonable strategic decisions of their trial attorneys.").

To satisfy the second prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. A defendant must affirmatively prove prejudice that is "so serious as to have deprive[d] [him] of a fair trial." *Id.* at 687. Because "[t]he defendant bears the burden of proving *Strickland* prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." *Fields v. Attorney Gen. of Md.,* 956 F.2d 1290, 1297 (4th Cir. 1992) (citing *Strickland,* 466 U.S. at 697)).

Petitioner first alleges that his counsel provided ineffective assistance by failing to file a timely notice of appeal from the district court's order denying Petitioner's motion for a new trial. Following his unsuccessful direct appeal to the Fourth Circuit, on October 13, 1999, Petitioner filed a motion for new trial. The motion relied on a purported confession by another inmate, James Brown, to having been the actual killer of McDowell. Brown later recanted this confession. On March 23, 2000, at the conclusion of an evidentiary hearing

on the matter, the district court denied Petitioner's motion. Defense counsel filed a notice on April 12, 2000 appealing the denial of the new trial motion, but the Fourth Circuit dismissed the appeal as untimely.

§2255(f)'s one-year deadline forecloses Petitioner's claim. The Fourth Circuit denied Petitioner's motion for a new trial on January 17, 2001. §2255(f)(4) thus provided Petitioner with the opportunity to file an ineffective assistance claim with respect to the denial until January 17, 2002—i.e., one year after "the date on which the facts supporting the claim...could have been discovered through the exercise of due diligence." Petitioner's claim is untimely and should be denied as such.

Petitioner next claims that his defense counsel was constitutionally deficient for failing to request an "informant instruction." His motion goes on to claim that had the jury been specially cautioned about the credibility of informant testimony, "there was a reasonable probability that the outcome of the proceeding would have been different." However, on February 17, 1998, Petitioner's defense counsel did request that the jury be separately instructed about informants as well as the credibility of witnesses in general. In addition to the trial court's instruction to scrutinize each witness's credibility, jurors were told that they must "determine whether any witness's testimony has been affected by some interest, or

22

by the agreement that he has with the government." Petitioner is unable to demonstrate that defense counsel's actions were inappropriate or that Petitioner suffered any prejudice as a result. This claim should be denied. *See Strickland,* 466 U.S. at 700.

Petitioner additionally claims that defense counsel provided ineffective assistance by failing to properly investigate Oliver Clark. In support of this claim, Petitioner again alleges that Clark's involvement in a separate law enforcement investigation, as well as his allegedly false statements, undermined Clark's credibility as a witness. Had his defense counsel properly investigated Clark, Petitioner asserts, the government's case against him would have been significantly weaker.

Petitioner's arguments here echo his earlier accusations of prosecutorial misconduct. They are similarly untimely and lack merit. As previously explained the record below demonstrates that Petitioner's defense attorneys were aware of the issues Petitioner cites pertaining to Clark's credibility. On cross-examination, defense counsel questioned Clark about his prior cooperation with law enforcement as well as inconsistent statements that Clark had made regarding McDowell's murder. Defense counsel highlighted these issues again for the jury during closing arguments. That the jury apparently found these criticisms unpersuasive neither undermines the reasonableness of

23

defense counsel's tactics nor indicates that Petitioner was wrongly prejudiced. As such, Petitioner fails on this ineffective assistance claim. *See Strickland,* 466 U.S. at 700.

Petitioner further alleges that his defense attorneys provided ineffective assistance by allowing prosecutors to provide various benefits to government witnesses—namely, Clark, Knight, and Dawkins—in exchange for their testimony. This allegation repeats Petitioner's earlier accusations of prosecutorial misconduct.

For the same reasons noted above, Petitioner fails to demonstrate that this claim warrants any relief. It is unnecessary to address whether defense counsel's conduct in this regard was constitutionally unreasonable because Petitioner has not demonstrated he was inappropriately prejudiced by this conduct. *See Fields,* 956 F.2d at 1297 (citing *Strickland,* 466 U.S. at 697). As explained, Petitioner's defense counsel impeached Clark, Knight, and Dawkins on the basis of benefits that they received from the government; much was made of the benefits during closing arguments as well. The trial court instructed the jury to consider any agreements that witnesses had made with the government in gauging the witnesses' credibility. Petitioner fails to indicate how he suffered resulting prejudice. Thus, his ineffective assistance claim should be denied. *See Strickland.* 466 U.S. at 700.

24

Petitioner next states, again echoing his earlier claims of prosecutorial misconduct, that his defense counsel provided ineffective assistance by "allowing [prosecutors] to commit [prosecutorial misconduct] by knowingly obtaining an indictment based upon false evidence"—namely, Clark's testimony. Petitioner fails to carry his burden of demonstrating that Clark provided false testimony, or that prosecutors knowingly relied on such evidence.

Petitioner cannot demonstrate that his counsel provided constitutionally deficient performance, even if prosecutors did introduce false testimony. As previously noted, Petitioner's counsel did not permit Clark's testimony to go unchallenged, but levied critiques at trial in an attempt to undercut Clark's testimony. Considering the options available at the time, it was a strategic decision for defense counsel to opt to leverage Clark's allegedly unreliable testimony as a means to argue to the jury that Clark lacked credibility. Petitioner therefore fails to demonstrate either that his counsel was constitutionally deficient or that any deficiencies in counsel's representation had a "reasonable probability" of impacting the result of the proceedings. As such, his ineffective assistance claim should be denied. *See Strickland*. 466 U.S. at 700.

Petitioner additionally claims that his defense counsel provided ineffective assistance by failing to object to the

25

prosecutor's allegedly improper and prejudicial remarks during closing arguments. For the reasons noted above, Petitioner fails to demonstrate that these remarks amounted to prosecutorial misconduct.

Even if Petitioner could succeed in demonstrating that the prosecutor's comments were constitutionally improper, it would still fall upon him to demonstrate that defense counsel's only reasonable response to the comments was to raise an objection. *See Bingham v. United States*, 2005 WL 1667684 at *17 (E.D. Va. June 10, 2005). "Such decisions as to whether to object are treated as strategic trial decisions and reviewed deferentially." *Id.* "[C]ounsel's decision to object during the prosecutor's summation must take into account the possibility that the court will overrule it and that the objection will either antagonize the jury or underscore the prosecutor's words in their minds. Thus, the question...to ask is not whether the prosecutor's comments were proper, but whether they were so improper that counsel's only defensible choice was to interrupt those comments with an objection." *Bussard v. Lockhart,* 32 F.3d 322, 324 (8th Cir. 1994). Petitioner offers no reason to believe that his defense counsel's only defensible choice was to object to the prosecutor's remarks.

Even assuming that defense counsel's decision to not object to the prosecutor's remarks was, in hindsight, tactically

imprudent, Petitioner fails to meet his burden of demonstrating that he suffered prejudice sufficient to warrant relief. *See Strickland*, 466 U.S. at 700.

Petitioner's next argument again echoes a previous claim of prosecutorial misconduct asserted as ineffective assistance of counsel. He asserts that defense counsel provided ineffective assistance by not requiring prosecutors to provide sufficient evidence of Petitioner's attempt to create a false alibi to conceal his murder of McDowell. Petitioner raised a similar claim on direct appeal of his conviction. The Fourth Circuit has already rejected this claim as having "no merit." *Smith*, 188 F.3d at * 1. Petitioner offers no reason to diverge from that finding and is foreclosed from re-litigating this issue after having been defeated on direct appeal. *Linder*, 552 f.3d at 397.

Petitioner further argues that his defense counsel provided ineffective assistance by "not properly investigating" purportedly exculpatory evidence—namely, (1) the aforementioned report of an interview with Petitioner prepared by Roy Grillo and (2) various D.N.A. samples. For the reasons noted above, Petitioner fails to present a colorable claim of a *Brady* violation with regard to any of these items. Petitioner asserts that his defense counsel neglected to sufficiently investigate these matters despite Petitioner having brought them to his counsel's attention

27

Counsel's failure to investigate potential defenses can, in certain circumstances, amount to ineffective assistance. *Wiggins v. Smith,* 539 U.S. 510, 521 (2003). But *Strickland* does not require counsel to investigate every conceivable line of mitigating evidence, and "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 521-22 (quoting *Strickland,* 466 U.S. at 690-91). *See also Buckner v. Polk,* 453 F.3d 195, 201 (4th Cir. 2006) (explaining that counsel's conduct is generally presumed to be a reasonable strategic choice). The Fourth Circuit has held that "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence...would have been produced." *Beaver v. Thompson,* 93 F.3d 1186, 1195 (4th Cir. 1996).

Petitioner's claim falters in two regards. First, he fails to make a threshold showing that his defense counsel failed to properly investigate the matters in question. As to the report that Petitioner claims Grillo prepared; defense counsel received a summary of the FBI interview of Grillo several weeks before trial. The summary does not indicate that Grillo prepared a report about McDowell's murder. It indicates that Grillo's knowledge of and involvement in the investigation was minimal. As to the purported D.N.A. samples that Petitioner cites, on

cross-examination defense counsel compelled Cox to admit that no blood was found on the items in question.

Second, if Petitioner could overcome the "heavy measure of deference" afforded to his defense counsel's judgments, *Wiggins,* 539 U.S. at 521-22, he still fails to demonstrate what exculpatory evidence defense counsel could have discovered upon further investigation. Petitioner merely alleges that "[t]his *could* be a case of a *Brady* violation."

As Petitioner fails to make a showing of either deficiency or prejudice, he fails on this ineffective assistance claim. *See Strickland,* 466 U.S. at 700.

Petitioner further claims that his defense counsel provided ineffective assistance by neglecting to impeach a government witness, Knight, on cross-examination, despite the trial court's instructions to do so. Defense counsel cross-examined Knight over the course of two days on a variety of issues, including impeaching Knight about alleged inconsistencies between statements that Knight had made regarding McDowell's murder. The court noted that impeachment was permissible, though not required. Thus, Petitioner fails to carry his burden of proving ineffective assistance with this claim. *See Strickland.* 466 U.S. at 700.

Lastly, Petitioner claims that his defense counsel did not "giv[e] [him] a defense," citing defense counsel's (1) alleged

failure to interview various correctional officers and other individuals, as well as (2) advising Petitioner to not take the stand in his own defense. Even assuming that Petitioner's characterization of defense counsel's conduct is accurate, he fails to demonstrate that he is entitled to any relief.

Addressing first Petitioner's claim regarding witness interviews, "[w]hen the alleged deficiency is a failure to investigate, the movant must provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (citations omitted) (internal quotations omitted). Petitioner fails to surmount this threshold to obtaining relief. Petitioner additionally claims that interviewing correctional officers would have revealed the organizational scheme of Lorton facility, such as how "the Protective Custody side was isolated from the Administration Segregation side." Petitioner neglects to explain the significance of this issue. Thus, Petitioner fails to demonstrate what additional exculpatory information could have been garnered if defense counsel had further investigated this matter.

As to the remaining witnesses whom Petitioner insists defense counsel should have interviewed, most of the individuals Petitioner lists did testify at trial—specifically: Major

30

Washington, Captain Hernandez, Sergeant Waldren, Corporal McDonald, Corporal Vaughn, Corporal Roberts, Corporal Johnson, and Grace Lopes. Petitioner fails to allege what information further investigation could have provided beyond that elicited at trial. Petitioner is not entitled to relief with regards to the remaining individuals he cites who did not testify at trial; "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative...Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson,* 238 F.3d 631, 635-36 (5th Cir. 2001) (citing *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986). *See also United States v. Roane,* 378 F.3d 382, 400 (4th Cir. 2004) (holding that conclusory claims about hypothetical witnesses provide no grounds for relief). Therefore, Petitioner fails to demonstrate either deficiency or prejudice. *See Strickland,* 466 U.S. at 700.

Petitioner additionally claims that his counsel advised him not to take the stand in his own defense. Petitioner fails to overcome the presumption of correctness that an attorney's tactical decisions are entitled to. *See Evans v. Thompson,* 881 F.2d 117 (4th Cir. 1989). Given Petitioner's criminal history, it was not objectively unreasonable for defense counsel to

31

advise Petitioner not to take the stand. Further, even if
Petitioner could establish that defense counsel was deficient in
this regard, he has still not met the requisite showing of
prejudice that is necessary under *Strickland*. *See Hernandez
Portillo v. United States*, 2014 WL 3615815, at* (E.D. Va. July
17, 2014) ("[T]he Court finds that had Petitioner testified
during trial his testimony would have been both cumulative and
not credible, and the weight of evidence against Petitioner was
overwhelming such that a jury could have found him guilty
regardless."). It falls upon Petitioner to show "that his
testimony had a reasonable probability of changing the outcome."
*United States v. Rashaad*, 259 F. App'x 972, at *2 (4th Cir.
2007) (per curiam) (unpublished). Because Petitioner cannot show
that his testimony had a reasonable probability of changing the
outcome, this claim, too, is denied. *See Rashaad*, 259 F.App'x at
*2.

The fourth category of claims upon which Petitioner
collaterally attacks his sentence and conviction alleges that
law enforcement agents assigned to investigate Petitioner's case
committed police misconduct. As previously noted, each of these
claims are time-barred, as well as procedurally defaulted by
virtue of Petitioner's failure to raise them on direct appeal.
*See Hernandez Portillo v. United States*, 2014 WL 3615815 at *16
(E.D. Va. July 17, 2014). Additionally, neither of Petitioner's

allegations of police conduct withstand closer scrutiny and therefore should be denied.

Petitioner first claims that Special Agent Martin Alevy committed police misconduct by allegedly coaching and allowing Oliver Clark to lie and commit perjury. Petitioner renews his speculation that Clark's cooperation with law enforcement precluded Clark from witnessing McDowell's murder.

For reasons noted above, Petitioner does not offer credible evidence that Clark committed perjury or did so with the knowledge or encouragement of government officials. Nor can Petitioner carry his burden of demonstrating police misconduct by alleging that Special Agent Alevy offered a witness in an unrelated investigation benefits in exchange for testimony. This fails to bear in any regard on the reliability of the evidence against Petitioner in his case. Thus, Petitioner fails to demonstrate an instance of police misconduct sufficient to warrant relief. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977) (holding that conclusive allegations are insufficient to entitle a petitioner to relief under §2255).

Petitioner's final allegation of police misconduct is that a government case agent, Special Agent Cox, violated *Brady* by failing to conduct forensic examinations on fingernails collected from McDowell during his autopsy. To establish a *Brady* violation, Petitioner must show that (1) the evidence at issue

is favorable to him; (2) the prosecution possessed the evidence and failed to disclose it; and (3) prejudice ensued because the evidence was material. *See United States v. Stokes,* 261 F.3d 496, 502 (4th Cir. 2001) (citations omitted). The Supreme Court has held there is no Due Process violation simply because "the police fail to use a particular investigatory tool," as the "police do not have a constitutional duty to perform any particular tests." *Arizona v. Youngblood,* 488 U.S. 51, 58-59 (1988); *see also United States v. Teran,* 496 F.App'x. 287 (4th Cir. 2012) (unpublished) (determining that the government does not violate *Brady* simply by failing "to employ all investigative techniques."); *Werth v. United States,* 493 F. App'x 361, 366 (4th Cir. 2012) (per curiam) (unpublished) ("While the government is obligated to disclose favorable evidence in its possession, it is not required to create evidence that might be helpful to the defense."). Thus, Petitioner fails to demonstrate that the government's conduct entitles him to relief.

The final category of claims upon which Petitioner attacks his sentence and conviction alleges that one of his defense attorneys, Robert Powell, operated under a conflict of interest and thereby provided ineffective assistance.

To prove that his sentence resulted from a violation of the Sixth Amendment right to effective assistance of counsel, Petitioner is required to meet the two-part test in *Strickland.*

34

466 U.S. 668 (1984). That test requires Petitioner to prove: (1)
that counsel afforded defective representation; and (2) that
there exists a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different. *Id.* at 694. In certain conflict of interest
cases, the Supreme Court recognizes a special rule. When counsel
labors under an actual conflict of interest, prejudice is
presumed if the petitioner demonstrates that: (1) counsel
actively represented conflicting interests; and (2) that an
actual conflict of interest adversely affected his lawyer's
performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 350 (1980).
*See also United States v. Stitt,* 552 F.3d 345, 350 (4th Cir.
2008).

The two requirements—actual conflict and adverse effect—are
related. *See Mickens v. Taylor,* 535 U.S. 162, 172 n.4 (2002)
("The *Sullivan* standard is not properly read as requiring
inquiry into actual conflict as something separate and apart
from adverse effect"); *United States v. Tatum,* 943 F.2d 370, 375
(4th Cir. 1991) (recognizing that the two requirements are
"often intertwined"). A petitioner must establish both
requirements to claim *Sullivan's* presumption of prejudice.
*Stitt,* 552 F.3d at 350.

An "actual conflict of interest" occurs when counsel's
interests diverge from his client's with respect to a material

35

factual or legal issue or to a course of action. *United States v. Nicholson,* 475 F.3d 241, 249 (4th Cir. 2007). And to establish an "adverse effect," a defendant must satisfy a three-part test:

> First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision...Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

*Stitt,* 552 F.3d at 351 n.4 (citations omitted). To show that an alternative strategy or tactic was "objectively reasonable" under the second prong, the defendant must establish that it was "clearly suggested by the circumstances." *United States v. Nicholson,* 475 F.3d 241, 252 (4th Cir. 2007). Finally, in establishing adverse effect, "the petitioner is not required to show that the strategy or tactic not taken would have been successful, but only that it would have been objectively reasonable." *Id.*

Petitioner's argument fails to establish that Powell operated under an actual conflict of interest at trial.

Petitioner cites prior allegations against Powell in a case unrelated to his own. The Virginia State Bar, the FBI, and the Arlington County Police Department investigated these allegations and found them without merit, but Petitioner now alleges Powell threw his death penalty trial to not be charged by the FBI and prosecuted by the government. Such allegations alone do not entitle Petitioner to relief. *See Blackledge* 431 U.S. at 74 (1977). Petitioner fails to specify any "adverse effect," that resulted from Powell's representation—aside from Petitioner's claim that Powell threw Petitioner's trial. Petitioner therefore does not show that he may obtain relief under §2255. *See Sullivan,* 446 U.S. at 350 ("Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.").

Petitioner relatedly claims that the trial judge was aware of Powell's conflict and therefore erred in appointing Powell to join Petitioner's team of defense attorneys. Petitioner failed to raise this claim of error on direct appeal. Thus, his claim is procedurally defaulted. *See Frady,* 456 U.S. at 167-68. Although procedural default may be overcome by demonstrating "cause" and "prejudice," *id.,* here, Petitioner fails to demonstrate either cause for failing to litigate such claim on appeal or resulting prejudice. Petitioner has also failed to

demonstrate that a "miscarriage of justice would result from the refusal of the court to entertain" the instant claim. *Mikalajunas,* 186 F.3d at 494. Accordingly, this meritless claim should be denied as procedurally defaulted.

"Evidentiary hearings on §2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a §2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Mareno-Morales v. United States,* 334 F.3d 140, 145 (1st Cir. 2003) (quoting *United States v. DiCarlo,* 575 F.2d 952, 954 (1st Cir. 1978)) (citations omitted).

An evidentiary hearing is not warranted in this case. The files and records show that Petitioner is not entitled to relief because he has failed to offer convincing evidence in support of his motion. Thus, Petitioner fails to demonstrate the persuasiveness of his position or overcome the evidence presented in opposition to his claims. Petitioner's claims should be denied. *See United States v. Lemaster,* 403 F.3d 216, 221 (4th Cir.2005) (citations omitted).

For the foregoing reasons, the Petition filed in this case pursuant to 28 U.S.C. §2255 should be denied.

An appropriate Order shall issue.


CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
~~August~~ Sept 8, 2015